[Crim. No. 893.  First Appellate District, Division One.—September 13, 1920.]

## THE PEOPLE, Appellant, v. WILLIAM DEWAR, Respondent.

[1] CRIMINAL LAW—NEW TRIAL—FAILURE TO STATE GROUNDS—INAPPLICABILITY OF RULE IN CIVIL CASES.—The rule applicable in civil cases that when a new trial is granted upon the ground of the insufficiency of the evidence to sustain the verdict the order shall so specify, otherwise, on appeal from such an order, it will be presumed that the order was not based on such ground, is not applicable to the procedure in the trial of criminal cases.

[2] ID.—APPEAL—PRESUMPTION.—On an appeal from an order granting a new trial in a criminal case, it must be assumed that the trial judge acted with a full appreciation of his duties and obligations, and that the conclusion which he reached was not governed by any idle nor any mere technical reasons.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, Matthew A. Brady, District Attorney, and Bert Schlesinger for Appellant.

Edwin V. McKenzie for Respondent.

WASTE, P. J.—The defendant, after conviction on a charge of grand larceny, moved for a new trial. His motion was granted, and from the order made in that behalf the people appeal.

[1] The record is silent as to the grounds upon which the motion for a new trial was made and granted. Respondent, in his brief, says it was based upon each and every ground specified in section 1181 of the Penal Code. In the absence of a showing to the contrary, therefore, we will presume that the motion was so made. One of the grounds specified in that section is that the verdict is contrary to the evidence. Appellant seeks to eliminate that ground from consideration on this appeal by invoking the rule applicable in civil cases that when a new trial is granted upon the ground of the insufficiency of the evidence to sustain the verdict the order shall so specify; otherwise, on appeal from such order, it will be presumed that the order was not based upon that ground. (Code Civ. Proc., sec. 657.) But we find nothing in the provisions of the Penal Code relating to new trials making the rule in civil actions applicable to the procedure in the trial of criminal causes. From the transcript of the proceedings on motion for a new trial we are given some evidence that the question of the sufficiency of the evidence, newly discovered evidence, and possibly the alleged improper admission of certain testimony, entered into the trial court's consideration of the matter.

The defendant was charged with stealing and carrying away five boxes of cyanide precipitates of the value of four thousand dollars, the personal property of Paul Hahnewald. It is the contention of the prosecution that the evidence of defendant's guilt was overwhelming. Paul Hahnewald, a witness for the state, testified that the precipitates had been stolen from his mill in Storey County, Nevada, in 1919, and

were later found in the possession of the defendant, who had been employed at his mill during that year. The defendant shipped the precipitates as paint to the Selby Smelting Works of San Francisco, to which concern he sought to sell them, alleging that he had secured them in Mexico. He seems to have made a number of conflicting statements as to the source from which the precipitates came, finally asserting that he found them in a woodshed, where they had laid unnoticed for nearly ten years. Defendant testified that the precipitates originally belonged to a man named Tobner, his wife's first husband. The precipitates found in the possession of the defendant and produced in court were identified by Hahnewald and by his mine superintendent and other experts, who also testified that the precipitates were fresh in appearance, were not discolored, and were apparently not of the age as claimed by the defendant. Defendant's testimony as to the age and ownership of the precipitates was also rebutted by Tobner, who was corroborated by his former partner, Jurian. Tobner and Jurian had engaged in the mining business some ten years previously, and it appeared that Jurian had kept a sample of the precipitates from their mill. This was produced in court and submitted to the jury for comparison with the precipitates claimed to have been stolen from Hahnewald.

In support of his motion for a new trial, defendant produced the affidavits of Henry Tobner and John L. Martell, witnesses for the prosecution; of Richard Beckert, a witness for the defense; the affidavit of his attorney, E. D. Knight, and one made by himself. The purpose of these statements was to discredit the evidence of the witnesses for the prosecution as to the means of identifying the source from which derived, and the age of the alleged stolen precipitates. Their further effect was to indicate that the defendant and his counsel were not prepared for the testimony to be given by Tobner and Jurian, and did not, at the time of the trial, appreciate its probable effect upon the jurors. After the trial Beckert and Martell made an independent examination of a portion of the alleged stolen precipitates and the sample produced by Jurian as coming from the Tobner mill. The alleged result of this examination was that there was no discernible difference in the degrees of, or the extent of, oxidation as between the two; that it was impossible to

discern which was the older of the two; that both might have been produced by the same cyaniding process, in the same mill, at the same time, from the same ore, and thereafter differently kept. These matters are made to appear from the affidavits. Tobner, who had been one of the chief witnesses for the prosecution on rebuttal, made similar statements, and added some details concerning the disposition of the precipitates and bullion from his mill some ten years previously. The result of his affidavit was to weaken the effect of his previous testimony and in a sense to widen the scope of his testimony, which might have been done upon cross-examination at the trial. The affidavit of the attorney for the defendant, in substance, is based upon an alleged hurried conclusion of the trial, by reason of the pressure of the business of the court, a preliminary misunderstanding of what Jurian and Tobner would testify to, and a misapprehension of the apparent effect upon the jury of their testimony and the production in court of the sample of the precipitates produced from their mine. He also asserts that the examination by the jury of the Tobner precipitates was had at a time when the courtroom was poorly lighted. Both defendant and his counsel assert that it was impossible to have ascertained the various facts relied upon before or during the trial.

At the hearing of the motion Andrew Jurian was produced and permitted by the court to testify on behalf of the defendant to the same effect as if he had made an affidavit. His testimony, in brief, was to the effect that the sample of the precipitates produced by him was in the same condition as when taken by him some years previously, the apparent purpose of which was to show that no change had taken place in the precipitates during that time. No counter-affidavits were produced by the prosecution, nor was any attempt made to counteract the showing thus made.

[2] Appellant contends that the court abused the wide discretion vested in it in the matter of passing upon motions for a new trial when it granted the motion in the instant case, but in the light of the well-settled rules applicable to the consideration of the appeals from orders of trial courts granting or denying such motions we do not see how we can properly so hold. As was said in *People* v. *Byrne,* 160 Cal. 217, 225, [116 Pac. 521, 525]: "The claim

of newly discovered evidence warranting a new trial is universally looked upon by the courts with distrust and disfavor.'' There is much in the record of the present case bearing out the suggestion of the attorney-general that the theory upon which the defendant in the court below sought a new trial was but the putting forward of an afterthought. and a subterfuge. But that was a question peculiarly addressed to the discretion of the trial court. (*People* v. *Sing Yow,* 145 Cal. 1, 4, [78 Pac. 235].) And it has been determined by that court, no doubt with a full realization of the responsibility involved, that the motion should be granted. Disassociated as we are from the atmosphere of the trial of this cause, and uninfluenced by those considerations, which the lower court, from his intimate knowledge of the situation presented to him by the motion for a new trial, no doubt gave to the matter, we would have little hesitancy in upholding the position of the appellant. But, as was said in *People* v. *Canfield,* 173 Cal. 309, 312, [159 Pac. 1046] : ''We can hardly manufacture in fancy a hypothetical situation in which a reviewing court would be justified in questioning the discretion of a trial court who should grant a new trial in a case involving a criminal charge. . . . We must assume that the learned judge of the trial court acted with a full appreciation of his duties and obligations, . . . and that the conclusion which he reached was not governed by any idle nor any mere technical reasons.''

The order granting a new trial is affirmed.

Richards, J., and Kinsell, J., *pro tem.,* concurred.