[Crim. No. 1992. Third Dist. Apr. 29, 1947.]

THE PEOPLE, Appellant, v. W. GRANT BROWN, Respondent.

Fred N. Howser, Attorney General, and Ruth Bernfeld, Deputy Attorney General, for Appellant.

J. O. Stemmler and C. H. Hogan for Respondent.

ADAMS, P. J.—This is an appeal by the People from an order granting defendant a new trial, after conviction by a jury. The amended information upon which defendant was tried charged him in two counts with grand theft, the first count alleging that on February 19, 1946, by false and fraudulent representations defendant obtained $300 from H. M. Weil, and the second count, that on March 7, 1946, by the same means defendant obtained $500 from the same person.

On December 7, 1945, Weil and defendant Brown entered into a contract by which Brown agreed to construct for Weil in Lodi a one-story garage building for $21,000, payable in five installments as specified portions of the building were completed. With the contract an escrow arrangement was made with a bank, by which all material bills for the job would be approved and presented by Brown, and thereupon paid by the bank; all checks were to be made payable to Brown and the vendors, jointly; all labor on the job was to be paid weekly upon presentation of contractor's statement of total accrued weekly payroll, check to be made payable to the contractor, Brown; sufficient funds were to be kept in the escrow deposit so that the accrued payrolls would be paid immediately upon presentation as aforesaid; written statements of material charges accompanied by copies of invoices and labor disbursements were to be made and filed with the bank; no payments were to be made to Brown in excess of the designated periodic draws as specified in the agreement. The contract, however, also provided that in the event that shortages of material became imminent, and, by making purchases in advance, delay in construction could be avoided, it was Brown's prerogative to make additional draws to cover such contingencies, upon approval by Weil.

The evidence indicates that Brown was insufficiently financed to carry on this and other construction jobs which

he had undertaken, and that he was also embarrassed at his inability to purchase necessary materials. Eventually Weil cancelled the contract.

Regarding the $300 which defendant is charged with having secured by false and fraudulent representations, the evidence shows that it was advanced by Weil on representations by Brown that he had an opportunity to buy nails—a particularly scarce commodity—from a Naval Supply Depot. He asked for an advance of $750 for this purpose, but Weil agreed to an advance of $300 only. Thereupon defendant purchased 58 kegs of nails for $200, and the nails were delivered to and stored in defendant's warehouse. Weil admitted that he knew at the time he approved the advance that $300 worth of nails would not be required in the construction of his own building. The evidence also shows that at the time of the cancellation of defendant's contract by Weil, 27 kegs of the nails were still in defendant's warehouse, some having been used on the Weil job, and some on other jobs.

The testimony regarding the $500 advance shows that defendant secured it on representations to Weil that he could buy 15,000 board feet of sheeting lumber which he would use in the construction of the roof on Weil's building, but would have to make an advance payment of $500 to secure it. Brown made the deposit of the $500 with the seller, Ed M. Rose & Company, and a portion of the lumber was delivered to the Weil job. It was, however, rejected by the building inspector of Lodi, as used lumber unfit for the intended use, and was returned to the seller. The evidence also showed that at the time of the trial Brown had a credit on the books of the Rose Company for the $500 which he had paid them; and he testified that a credit memorandum for the amount would go to Weil.

█ The trial court granted the new trial on the ground that there was no evidence of a false pretense or the embezzlement of any money by defendant; that Brown used $200 of the $300 advanced to buy nails, for that purpose, and that if he used the other $100 for his own purpose he was, at most, guilty of petty theft. That as for the $500 advanced, that also was paid out for the purpose for which it was secured, and was still available, the lumber having been returned to the seller.

We think that under the circumstances the trial court cannot be said to have abused its discretion in granting the new trial.

In *People* v. *Knutte,* 111 Cal. 453, 455 [44 P. 166], a prosecution for obtaining money and property by false pretenses, the court said that it had been so repeatedly held as to be axiomatic that where a new trial is granted upon the ground of insufficiency of the evidence, the court's action will not be disturbed except in a case showing a manifest and unmistakable abuse of discretion; that this discretion is, of course, not arbitrary, but like any other judicial function, is to be exercised under the sanction of the judicial oath; that the strong presumption being always that it was so exercised, it will require in any case a very clear showing to the contrary to overcome such presumption and enable an appellate court to say that the power of the court in that respect was abused; that while it is the exclusive province of the jury to find the facts, it is one of the most important requirements of the trial judge to see to it that this function of the jury is intelligently and justly exercised, and that the trial judge should always satisfy himself that the evidence as a whole is sufficient to sustain the verdict; and if, in his sound judgment, it is not, he should unhesitatingly say so and set the verdict aside. It was also said in that case that the fact that the evidence in the case might have a legal tendency to prove all the material facts did not affect the question; that guilt is to be established beyond a reasonable doubt; and while there might be some evidence to support each fact, this did not signify that it was necessarily such as to satisfy the conscience of the judge that a case was made which warranted conviction.

In *People* v. *Canfield,* 173 Cal. 309, 312 [159 P. 1046], the court in affirming an order granting a new trial, said: ''We can hardly manufacture in fancy a hypothetical situation in which a reviewing court would be justified in questioning the discretion of a trial court who should grant a new trial in a case involving a criminal charge. Surely there is no basis in the case before us for the substitution of the discretion of this court for that of the superior court. We must assume that the learned judge of the trial court acted with a full appreciation of his duties and obligations, with the cited section of the constitution in mind, and that the conclusion which he reached was not governed by any idle nor any mere technical reasons.''

In *People* v. *Westcott,* 93 Cal.App. 216, 220 [269 P. 724] (hearing in Sup. Ct. denied), the court said that when a trial judge in a criminal case, sitting as he does as a thirteenth juror, is not convinced to a moral certainty and beyond a reasonable doubt that the evidence is sufficient in character and weight to justify a conviction, it is not for a reviewing court to say as a matter of law that the granting of a new trial constituted an abuse of discretion.

In *People* v. *Mattmueller,* 25 Cal.App.2d 418, 421 [77 P.2d 504], in affirming an order granting a new trial it was said that even though the reader of the cold record might conclude that the evidence was ample to sustain the conviction, reversal of the order granting a new trial is not warranted; that the judge who presided at the trial and had the opportunity to observe the demeanor of the witnesses as they testified and of discovering the motives that may have animated them in giving their testimony, and the interest, if any, which they had in the outcome of the case, occupied a superior position to that which a reviewing tribunal occupies in deciding whether or not a retrial is justified. Also see *People* v. *Harband,* 99 Cal.App. 32, 36 [277 P. 1102]; *People* v. *White,* 85 Cal.App. 241 [259 P. 76]; *People* v. *Prudencio,* 93 Cal. App. 241, 248-249 [269 P. 698]; *People* v. *Washington,* 86 Cal.App. 133 [260 P. 806]; *People* v. *Williams,* 64 Cal.App. 144, 148 [220 P. 675].

In granting the motion for a new trial in this case the trial court said that he had been unable to find any evidence of false pretenses in securing either the $300 or the $500 advance, or that, having received the money, defendant embezzled it; that Weil admitted that at the time he gave Brown the $300 to buy nails he knew that it could not possibly take $300 worth to complete the Weil building, and consequently he must have advanced the money to allow Brown to buy some other nails to help him along; that it was not shown that the nails were not still in the warehouse. Also as regards the $500 transaction, that no evidence was presented to show any false pretenses, or that after he got the money, he embezzled it.

Before the trial court the attorney for the prosecution, while arguing in opposition to the motion for a new trial, admitted that if only the two transactions charged in the information were considered and other circumstances regarding defendant's dealings with Weil were eliminated, possibly the

court's position in the matter would be proper, and that the State had failed to prove its case; that if only the testimony regarding those particular counts were considered and the entire transaction between the two parties was left out, probably a man should not be prosecuted on that evidence alone. But he argued there, as he does here, that defendant made other misrepresentations to Weil and secured other advances, and that these other transactions should be considered as showing the intent of defendant when he secured the two advances charged in the information, and as evidence of bad faith on his part. Without passing upon the admissibility of the evidence of other circumstances relied upon by the prosecution, in the absence of a showing of fraudulent misrepresentations regarding the transactions charged, and absence of evidence that the moneys were not used for the purpose for which defendant represented he needed them, bad faith or misrepresentations in other matters do not *compel* a conclusion that defendant is guilty as charged; and the weight to be given to such other circumstances was a matter for the trial court to consider in determining the motion for a new trial. And we cannot review that evidence and determine therefrom that the trial court should have drawn different inferences therefrom, and abused its discretion by failing to do so. Even though, had the trial court denied the motion for a new trial, it might be possible to find in the evidence sufficient support for such action, it does not follow that there was an abuse of discretion in its granting such motion. This is not a situation in which the evidence is to be viewed in the light most favorable to the prosecution, as the People's brief suggests, but one in which presumptions favor the order of the trial court.

The order appealed from is affirmed.

Schottky, J. pro tem., and Thompson, J., concurred.